UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-cv-00600-FDW-DSC

| | |
|---|---|
| COREY JONES, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>VECTOR FLEET MANAGEMENT, LLC, )<br>)<br>Defendant. )<br>) | ORDER |

THIS MATTER is before the Court on Defendant's Second Partial Motion to Dismiss (Doc. No. 11) Plaintiff's Amended Complaint (Doc. No. 8), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant filed a Memorandum in Support of its Partial Motion to Dismiss, (Doc. No. 12), after which Plaintiff timely filed a Response in Opposition to Defendant's Motion (Doc. No. 15), and Defendant filed a Reply. (Doc. No. 16). Also before the Court is Defendant's First Motion to Dismiss (Doc. No. 8).

For the reasons discussed below, Defendant's First Motion to Dismiss (Doc. No. 6) is DENIED AS MOOT, Defendant's Second Partial Motion to Dismiss (Doc. No. 11) is GRANTED, and Count One of Plaintiff's Amended Complaint (Doc. No. 8) is DISMISSED WITH PREJUDICE.

**I.     BACKGROUND**

Because this matter is before the Court on Defendant's 12(b)(6) motion, the Court construes the complaint in the light most favorable to Plaintiff. Defendant Vector Fleet Management, LLC, hired Plaintiff as a Fuel Technician on or about November 13, 2017. (Doc. No. 8, p. 1, ¶ 1). Plaintiff alleges he suffered racial discrimination and harassment by two of his

1

co-workers over the course of his employment with Defendant. Id. at ¶ 2. Plaintiff reported this harassment to his supervisor, David Moore, three times during his first month of work. Id. at 3, ¶ 11–13. Plaintiff reported this allegation of racial harassment to General Supervisor Greg Hill as well, yet the behavior allegedly continued. Id. at ¶ 14. Ultimately, Plaintiff reported these allegations to the Human Resources Department in an email dated December 22, 2017, yet, again, he alleges the racial harassment persisted. Id. at 1, ¶ 3; (Doc. No. 8-1, p. 2-3).

In December 2017, Plaintiff lost a company phone while on the job, although he was not reprimanded at the time. (Doc. No. 8, p. 3-4, ¶ 15). During the same month, Plaintiff was tasked with refueling two trucks in inclement weather conditions. Id. at 4, ¶ 18. Plaintiff was only able to refuel one truck, for which he was subsequently reprimanded. Id. Plaintiff received a second write-up on December 23, 2017 for failing to timely communicate with his supervisor, although Plaintiff claims he "had called three times with no answer." Id. at 5, ¶ 19. On February 4, 2018, Plaintiff was asked to take on additional tasks, including the work he was normally assigned to complete. Id. at ¶ 21. Plaintiff was again written up when he "fail[ed] to complete this impossibly large workload," although Chris Schaffer, who replaced Moore as Plaintiff's supervisor, destroyed the write-up slip after Plaintiff commented on the unfairness of the disciplinary action in light of the circumstances. Id. at 5-6, ¶ 22.

Plaintiff returned to work on February 8, 2018, after having been off for two days. Id. at 6, ¶ 25. When he arrived, he was written up for having lost the phone in December. Id. On February 13, Plaintiff requested time off work for February 22-23, 2018, which was granted. Id. at ¶ 26. However, due to the number of write-ups Plaintiff received, Defendant informed him that he would not be granted a raise. Id. at ¶ 27. On February 14, 2018, Plaintiff injured his shoulder

while at work, and after his shift informed the Human Resources Department of the injury. Id. at ¶ 28. Plaintiff continued to experience pain from his injury after work and contacted Schaeffer to inform him that he needed to go to the hospital. Id. Schaeffer agreed and requested that Plaintiff send a doctor's note. Id.

On February 14, 2018, Plaintiff sent Schaeffer a copy of his doctor's note via text message. Id. at 7, ¶ 31–32. The doctor's note stated that Plaintiff could return to work on February 16, 2008, but was restricted from lifting anything greater than five pounds with his right arm for seven days. (Doc. No. 8-3). Plaintiff contends that he suffered a SLAP tear (Superior Labral tear from Anterior to Posterior) as a result of this injury. (Doc. No. 8, p. 6, ¶ 29). Plaintiff further asserts that he became disabled as of that date, and continues to suffer from the ailment today, as the limitations to his range of motion and arm strength remain. Id. at 11-12, ¶ 49-51. Based on these allegations, Plaintiff argues that he qualifies as "disabled" within the meaning of the Persons With Disabilities Act. Id. at 11, ¶ 48; N.C. Gen. Stat. § 168A-1 et. seq.

On February 15, 2018, Schaeffer informed Plaintiff he could not yet return to work, as there was no "light duty" position available for him that would accommodate his lifting restriction. (Doc. No. 8, p. 7, ¶ 33. Plaintiff received an email on February 19, 2018, stating that he would need to submit a work release note before he could return to work. Id. at ¶ 34; (Doc. No. 8-5). The same day, Defendant conducted an audit of their pump meters, which revealed Plaintiff had twice incorrectly recorded the amount of fuel he pumped from February 5-6, 2018. (Doc. No. 8, p. 7-8, ¶ 35).

On February 27, 2018, Plaintiff obtained a work release note, one week after Defendant asked him to submit the document. Id. at 8, ¶ 37. The release note, which Plaintiff faxed to

3

Defendant that same day, stated Plaintiff could return to work without restrictions on March 2, 2018. Id.; (Doc. No. 8-6). That day, Hill called Plaintiff to inform him that the company had "terminated [his] position" due to Plaintiff's absence, as they needed to "have someone in [t]here" that could do the job and who could be there each day. (Doc. No. 8, p. 8-9, ¶ 38). Plaintiff alleges that Hill suggested he "had to let [Plaintiff] go because of his disability." Id. at 9, ¶ 38. Hill expressed to Plaintiff that if they did not let him go, they would have to hire someone to work overtime to fill Plaintiff's position until he could return to work. Id. However, Hill offered to help Plaintiff obtain a position in Charlotte "because he knew that [Plaintiff] was well-qualified for the job and would be a perfect fit for it." Id. at ¶ 40. However, Plaintiff asserts that Hill did not follow through, and Plaintiff's application for the position was denied. Id. at 10, ¶ 40.

Plaintiff received a termination of employment letter from Defendant dated February 28, 2018. Id. at ¶ 41; (Doc. No. 8-7). The termination letter listed three bases for Defendant's decision to fire Plaintiff, including: (1) Plaintiff's loss of a company issued phone; (2) audits of the fuel pumps revealing Plaintiff falsified fuel pump records on two separate dates; and (3) Plaintiff's "insubordination or other disrespectful conduct" for "failing to return multiple telephone calls or text messages to [his] supervisor on [his] intent to return to work." (Doc. No. 8-7). Plaintiff alleges these justifications were pretextual, and that Defendant's true motivations for firing him were based on his disability, constituting discrimination in violation of the North Carolina Equal Employment Practices Act. (Doc. No 8, p. 10–11, ¶¶ 42, 47); N.C. Gen. Stat. §143-422.2(a).

On June 13, 2018, Plaintiff filed a Discrimination Charge with the Equal Employment Opportunity Commission. (Doc. No. 8, p. 10, ¶ 43). Plaintiff received his right to sue letter on August 8, 2019. Id. Defendant contends this charge alleged only race-based claims, and that

4

Plaintiff did not add allegations of disability discrimination until filing this lawsuit on November 6, 2019. (Doc. No. 12, p. 3; Doc. No. 1). Plaintiff's initial complaint listed three causes of action: (1) Wrongful Discharge in Violation of Public Policy; (2) Violation of Title VII of the Civil Rights Act of 1964; and (3) Violation of 42 U.S.C. § 1981. (Doc. No. 1, pp. 9, 10, 12).

Defendant received an Extension of Time to file an Answer, and thereafter timely filed an Answer and a Partial Motion to Dismiss on February 24, 2020. (Docs. Nos. 5, 6, 7). Defendant moved to dismiss several of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), including plaintiff's disability discrimination claims for Failure to State a Claim. (Doc. No. 6). Plaintiff then filed an Amended Complaint alleging the same claims discussed above on March 9, 2020, as well as a Response in Opposition to Defendant's Motion. (Docs. Nos. 8, 9.)

On March 23, 2020, Defendant filed a Second Partial Motion to Dismiss, Memorandum in Support, and an Answer to Plaintiff's Amended Complaint. (Docs. Nos. 11, 12, 13). Defendant asserts that, under Federal Rule of Civil Procedure 12(b)(6), Plaintiff still fails to state a claim for wrongful discharge in violation of North Carolina Public Policy, and thus moves to dismiss Count One of Plaintiff's Amended Complaint with prejudice. (Doc. No. 12, pp. 2, 4). Plaintiff filed a Response in Opposition to Defendant's Second Partial Motion to Dismiss, Defendant filed a Reply, and the matter is now before the Court. (Docs. Nos. 15, 16).

## II. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). While the Court accepts plausible factual allegations in the complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F. 3d 175, 180 (4th Cir. 2000). A court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted).

### III. ANALYSIS

"As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." Young v. City of Mount Ranier, 238 F.3d 567, 572 (4th Cir. 2001) (quotation omitted); see also Brown v. Phillips, No. 3:16-cv-561-FDW, 2018 WL 576307, at *2 (W.D.N.C. Jan. 26, 2018). Because Defendant filed its original Partial Motion to Dismiss (Doc. No. 6) prior to Plaintiff's filing of the Amended Complaint, it is DENIED AS MOOT.

Plaintiff, an at-will employee of Defendant employer at all times relevant to this proceeding, argues that Defendant violated public policy as set forth in the North Carolina Equal Employment Practices Act. (Doc. No. 8, p. 10); N.C. Gen. Stat. § 143-422.2(a). To support this claim, Plaintiff argues that the non-discriminatory reasons for his discharge as set forth in his termination letter are "legal pretext" to obscure Defendant's true discriminatory purpose—that Defendant fired Plaintiff because on his disability. (Doc. No. 8, p. 10, ¶ 41-42).

The Employment Act provides that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without

6

discrimination or abridgement on account of . . . handicap by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2(a). Under North Carolina law, it is well-established that an employee-at-will has no claim for relief for wrongful discharge. See Walker v. Westinghouse Elec. Corp., 335 S.E.2d 79, 85-86 (N.C. App. 1985), disc. rev. denied 341 S.E.2d 39 (N.C. 1986). Either party to an employment-at-will contract can terminate the contract at will for no reason at all, or for an arbitrary or irrational reason. Privette v. Univ. of N.C. at Chapel Hill, 385 S.E.2d 185, 190 (N.C. App. 1989). However, this doctrine is not without limits, and a valid claim for relief exists for wrongful discharge of an employee at will if the contract is terminated for a purpose that violates public policy. Coman v. Thomas Mfg. Co., 381 S.E.2d 445, 447 (N.C. 1989).

The public policy exception has been narrowly applied in disability cases. See Kelly v. Carteret Cty. Bd. Of Educ., 560 S.E.2d 390, 391-92 (N.C. App. 2002); see also Burgess v. Your House of Raleigh, Inc., 388 S.E.2d 134, 137 (N.C. 1990) (affirming that dismissal was proper concerning a complaint which alleged wrongful termination in violation of the North Carolina Handicapped Persons Protected Act, where the employee failed to allege sufficient facts to show he qualified as a handicapped person under the Act).

The Employment Act does not define the term "handicap," and thus the Court must look to "other North Carolina statutes relating to the same subject matter to determine legislative intent." Simmons v. Chemol Corp., 528 S.E.2d 368, 370 (N.C. App. 2000) (citing McCullough v. Branch Banking & Trust Co., Inc., 542 S.E.2d 569, 574 (N.C. App. 2000). As a matter of common practice, North Carolina courts utilize the definition of "disability" within the North Carolina Persons with Disabilities Protection Act ("NCPDA"). Hopkins v. MWR Mgmt. Co., No. 15 CVS

7

697, 2015 WL 6829326, at *5 (N.C. Super. Ct. Nov. 5, 2015). Therefore, in order to state a claim upon which relief may be granted, Plaintiff must allege sufficient facts to show he qualifies as a "person with a disability" under the NCPDA. Id.

Within the text of the NCPDA, a "person with a disability" is defined as "any person who (i) has a physical or mental impairment which substantially limits one or more major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." N.C. Gen. Stat. § 168A-3(7a). A person with a disability "has a record of such an impairment" when they "ha[ve] a history of, or ha[ve] been misclassified as having, a mental or physical impairment that substantially limits major life activities." Id. § 168A-3(7a)(a). In the event that a person does not qualify as a disabled person under the above definition, in the alternative, persons who are "regarded as having an impairment" will also receive protection under the statute. Id. § 168A-3(7)(b). However, the term, "physical or mental impairment" specifically excludes "any disorder, condition, or disfigurement which is *temporary in nature, lasting six months or fewer*, and leaving no residual impairment." Id. § 168A-3(7a)(d) (emphasis added).

Based on the assertions in Plaintiff's Amended Complaint, along with the exhibits attached thereto, Plaintiff fails to allege that he was a "person with a disability" at the time Defendant terminated his position. Plaintiff argues he became disabled when he injured his shoulder at work on February 14, 2018 and suffered a SLAP tear which caused him to "los[e] significant arm strength and range of motion." (Doc. No. 8, p. 6, ¶ 29). Plaintiff asserts the legal conclusion that he "had a physical impairment that substantially limited one or more major life activities and had a record of such impairment." Id. at 11, ¶ 48. Plaintiff contends that his injury has "limited his ability to care for himself, perform manual tasks, sleep, lift, bend, and work. Id. at ¶ 50. He also

8

alleges his disability "limited his operation of a major bodily function, including, but not limited [to] functions of the musculoskeletal system." Id.

Assuming these allegations are true, Plaintiff still fails to allege his impairment had lasted long enough to be considered a disability under the NCPDA. The definition of "person with a disability" does not apply to any person claiming to have a "physical or mental impairment" which is temporary, in that it lasts less than six months. N.C. Gen. Stat. § 168A-3(7a)(d). Plaintiff contends that his impairment lasted longer than six months because he has suffered residual pain and limitation in movement since he incurred the SLAP tear on February 14, 2018. (Doc. No. 8, pp. 6, 11-12, ¶ 28, 29, 51). Plaintiff states his handicap has lasted greater than two years, and persists today. Id. at 11-12, ¶ 51. However, Plaintiff received his termination letter from Defendant which listed a date of February 28, 2018. (Doc. No. 8-7). Thus, at the time Plaintiff was fired, he did not have a "disability" under the NCPDA, as his condition had existed for around two weeks rather than six months or longer. An impairment that had existed for only two weeks falls within the list of statutorily excluded conditions as a temporary impairment. N.C. Gen. Stat. § 168A-3(7a)(d).

Plaintiff argues in the alternative that, although his physical impairment did not prevent him from doing his job, Defendant regarded him as having such an impairment. (Doc. No. 8, p. 12, ¶ 52); N.C. Gen. Stat. § 168A-3(7a)(b)(1). However, this is a conclusory statement unsupported by exhibits attached to the Amended Complaint. The Court cannot accept as true allegations which are contradicted by exhibits. See Veney, 293 F.3d at 730.

At the time Plaintiff was terminated, Defendant was aware only that Plaintiff had a temporary limitation. Plaintiff's doctor's note contained a one-week restriction limiting plaintiff

9

from lifting anything greater than five pounds with his right arm. (Doc. No. 8-3). Additionally, Plaintiff submitted a work release note to Defendant which stated that Plaintiff could return to work without restriction on March 2, 2018. (Doc. No. 8-6). Thus, Defendant had no knowledge at the time of firing that Plaintiff was disabled, and could not have discriminated against him based on that characteristic. The Fourth Circuit has concluded that "an employer cannot fire an employee 'because of' a disability unless it knows of the disability. If it does not know of the disability, the employer is firing the employee 'because of' some other reason." Huppenbauer v. May Dep't Stores Co., No. 95-1032, 1996 WL 607087, at *7 (4th Cir. Oct. 23, 1996) (quoting Hedberg v. Indiana Bell Tel. Co., Inc., 47 F.3d 928, 932 (7th Cir. 1995)). Although the context of Huppenbauer was under the Americans with Disability Act ("ADA"), North Carolina courts analyze state law disability claims in accordance with the ADA. See Jefferson v. Biogen Idec Inc., No. 5:11-CV-237-F, 2012 WL 3629219, at *7 (E.D.N.C. Aug. 22, 2012) ("In evaluating state law discrimination claims, North Carolina courts look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases. Accordingly, when faced with state law wrongful discharge on the basis of handicap/disability claims, courts utilize the evidentiary framework used in evaluating disability discrimination claims under the ADA." (citation and quotation omitted)).

Plaintiff suggests that "Hill knew that [Plaintiff] was disabled and that he was going to continue to be disabled in the future." (Doc. No. 15, p. 7). The Court cannot accept this conclusory assertion. An employer "should not be held responsible for *guessing* that [an injury] had progressed to a point where [the plaintiff] was a disabled person." Starnes v. Veeder-Root, No. 1:15-CV-1002, 2017 WL 913633, at *8 (M.D.N.C. Mar. 7, 2017), aff'd, 694 F. App'x 200 (4th

Cir. 2017) (alterations in original and added) (emphasis in original) (internal citation omitted). The same logic applies to Plaintiff's argument here. Defendant cannot be held responsible for future predictions of Plaintiff's physical impairment. On the evidence before it, Defendant was only aware that Plaintiff had a temporary impairment, which would allow him to return to work with no restrictions within some two weeks. (Docs. Nos. 8-3, 8-6; Doc. No. 12, p. 3). Indeed, "there is no evidence that Defendant had any information suggesting that Plaintiff's injury may constitute an impairment protected by the NCPDA or that Defendant regarded, or treated, Plaintiff as having such an impairment." Sledge v. Graphic Packaging Int'l, Inc., No. 1:12-CV-1141, 2014 WL 1096914, at *6 (M.D.N.C. Mar. 19, 2014), aff'd, 585 F. App'x 50 (4th Cir. 2014).

Plaintiff's argument that Defendant regarded him as having a disability is also contradicted by his assertion that Hill offered to assist him in obtaining a position in Charlotte. According to Plaintiff, Hill knew he "was well-qualified for the job and would be a perfect fit for it." (Doc. No. 8, p. 9, ¶ 40). This directly conflicts with Plaintiff's argument that Defendant regarded him as having a physical impairment that prevented him from working. Id. at 12, ¶ 52. To demonstrate that Defendant "regarded as being disabled in the major life activity of working," Plaintiff must allege that Defendant "perceive[d] him as being disqualified from a broad variety of jobs." Rishel v. Nationwide Mut. Ins. Co., 297 F. Supp. 2d 854, 867 (M.D.N.C. 2003) (alteration in original) (internal citation and quotations omitted). Given that, by Plaintiff's own allegations, Defendant perceived him as able to work in at least one other position, it is apparent that Defendant did not perceive him of incapable of work generally.

Defendant did not fire Plaintiff "because of" his disability, as it had no knowledge that Plaintiff had a "disability" as defined by state law, and thus it must have done so for other reasons.

11

See Huppenbauer, 1996 WL 607087 at *7. Defendant provided other, non-discriminatory reasons for terminating Plaintiff, including loss of a company phone, falsification of fuel pump records, and lack of communication. (Doc. No. 12, p. 3). Given that an employer retains the freedom "to choose among equally qualified candidates provided the decision is not based upon unlawful criteria," Defendant's decision to fire Plaintiff for reasons other than disability does not violate N.C. Gen Stat. § 143-422.2. Wileman v. Frank, 979 F.2d 30, 38 (4th Cir. 1992) (quotation omitted); see also Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (holding that "[j]ob performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision").

Plaintiff has not pled sufficient factual information to demonstrate that Defendant violated public policy as codified in N.C. Gen. Stat. §143-422.2. The conclusory allegations contained in Plaintiff's Amended Complaint cannot be regarded as true in light of the contradictions apparent in the exhibits attached thereto. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to [Fed. R. Civ. P. 10(c)], the exhibit prevails." Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Plaintiff's doctor's note and work release note both indicate that Plaintiff's impairment was temporary, lasting just over two weeks. (Docs. Nos. 8-3, 8-6). Thus, Plaintiff has not alleged facts sufficient to show that he was a "person with a disability" or that Defendant "regarded [him] as" having such an impairment at the time he was fired. N.C. Gen. Stat. § 168A-3(7a). The allegations concerning Count One in the Amended Complaint are conclusory and unsupported by the exhibits or by state law. This is insufficient to survive a 12(b)(6) Motion to Dismiss.

12

Case 3:19-cv-00600-FDW-DSC   Document 17   Filed 05/15/20   Page 12 of 13

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. 6) is DENIED AS MOOT, and Defendant's Second Partial Motion to Dismiss (Doc. No. 11) is GRANTED. Count One of Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Signed: May 14, 2020

Frank D. Whitney
Chief United States District Judge